Good morning, Illinois public court first district court is now in session. The fourth division, the Honorable Justice Mary Kay Rochford presiding case number two to dash 0785 Frank DeFranco versus Patricia family. Good morning, everyone. I'm Justice Rochford and I'm here, I'm here with my colleagues Justice Hoffman and Martin. Before we begin, if the part of the attorneys that are going to be arguing, would please introduce themselves first for the epaulette and then we will be arguing for the epaulette. Ken Michaels. And for the police. Good morning, your honor. This is Michael Casper on behalf of the county clerk. And I will be arguing parts of the argument if that's okay with your honors. And then I will defer to prevailing candidate, Judge Fallon's attorney for the remainder. Good morning, our Stephen letters and scam behalf of Judge Fallon. All right, so we have a lot of 15 minutes per side. So if the police can split that 15 minutes we would be happy to hear from both of you. Thank you, Your Honor. Michael Casper for the clerk will take five minutes and I'll defer the remaining 10 to Mr lessons. If I must. I was just going to note that this is not what I had seen filed with the court, namely the what I had seen filed was that Mr Casper was arguing, but if this is how they proceed. So be it, but that's not what was filed with the court. Mr. Michaels, how much time would you like to reserve for rebuttal, two minutes, two minutes. Right. So they'll be taken from my 15 minutes correct. Is that your process. It will. Yes, it is. Thank you. Anytime you're ready Mr Michaels, you may begin. Thank you, Your Honors. Pleased to court, my name is Ken Michaels, I am counsel for the appellant Frank DeFranco election contest permit us to check to audit to preserve and improve upon our democratic processes. Election contests are the vehicle that we have to improve upon our elections and this is increasingly going to be important in connection with vote by mail vote voting in the future. Recent election show that vote by mail voting is on the upswing, and we can expect that to continue. Mr DeFranco lost the 12th sub circuit election by 502 votes. He exercise his rights to election contest. He did everything he was supposed to do and expended substantial resources in doing so. He conducted a discovery recount with the clerk of the court, and then file a complaint or a petition for a recount with facts based upon the information that had been given by the county clerk through the discovery recount. He did not speculate as to facts he presented his arguments based on what was presented in the discovery recount by the clerk's office. He then proceeded forward speeding a motion for summary motion to dismiss and discovery was lodged. Respondents rebuffed the discovery efforts, and with the exception of Mr Michalowski filing an answer to one interrogatory stating that there were approximately 16,600 vote by mail ballots cast in this sub circuit election and that there were envelopes available for each of those ballots. When the trial court directed the parties to file motions to compel each other to comply with discovery, the respondents filed their motion, their first motion for summary judgment. The motion for summary judgment presented, it did not have attached as exhibits, but it presented through electronic links to a private drive and Mr Casper's law office 22,000 plus electronic images of vote by mail envelopes. Over the next three and a half months after that those images had been produced, Mr DeFranco's attorneys zealously reviewed each of those images one by one. And through their review of those images found that out of the 22,000 vote by mail envelope images that were produced, that there were thousands of signatures that did not meet any standards for passing muster to be counted under section 19-8G. This appeal presents two questions essentially for the court. One, whether the trial court abused its discretion in refusing to allow Mr DeFranco to leave to file his amended complaint to include the information that had been blindly revealed through the production of these electronic images of envelopes. The Loyola Academy factors, the four factors all pointed in favor of allowing such an amended complaint. Nonetheless, the trial court denied that leave to file the amended complaint. The second question presented is whether the trial court erred, which it did in finally granting summary judgment, not based on any evidence, not based upon facts. All the issues of material fact were still left unresolved, but based upon the fact that there were 22,000 plus electronic envelope images, not the envelopes themselves, but the images on Mr. Casper's hard drives or whatever drives, which revealed, which the court found were not there for the truth of the matter asserted. So therefore they did not need to meet the definition of public records, which they didn't. In short, the trial court cut off Mr. DeFranco's opportunity to conduct a contest. Section 23-23.2 of the Election Code is very clear. It changed the common law. Courts have recognized it. It directs that the trial court should, not may, but should order an election recount if there is a reasonable likelihood that it's the test of a different result in the election. Not only is there a reasonable likelihood based on the evidence found, but even in its memorandum opinion, denying the motion for leave to file the amended complaint, the trial court wrote, acknowledged that the appellant, quote, identifies several thousand more votes, which, if disallowed, may be sufficient to change the outcome of the election. Similarly, in their response brief in this appeal, respondents argue at one point that if Mr. DeFranco's recount were allowed, that thousands of voters, in their perception, would be disenfranchised. In fact, they're not being disenfranchised, but this is a clear recognition, both by the trial court and by the respondents, that there would have been a different election result if a recount had been permitted, and which Mr. DeFranco was entitled to based upon his petition. Regarding the denial, the first factor under the denial of the amended complaint, I'm sorry, that is whether there was a cure. The trial court found that there was no cure being proposed by the amended complaint. Whether there was any surprise, the Loyola Academy, which is the second element under Loyola Academy, the respondents identified three arguments on why they were taken by surprise or prejudice by an amended complaint being allowed. First, they would lose their motion for summary judgment. Yes, they would. Two, the county clerk would need to prepare for a next election. Well, that was going to happen no matter what. That was not really tied to whether there was an amended complaint or not. The county clerk already knew what the allegations of the deficiencies were. The county clerk could have fixed the next election processes based upon the allegations in the proposed amended complaint without going further. Three, Ms. Phelan would no longer be a judge. Yes, that is true. That would have been a result if the recount shows that there was a different result in the election. The trial court acknowledged that none of these arguments in itself were sufficient, but in the aggregate, given the fact that there were new claims being made, according to the trial court, given such a fact that these three items constituted prejudice. There were no new claims presented. The amended complaint still was pursuing claims under Section 19-8G and 19-6 of the Election Code. What was different in the amended complaint was based upon the envelope images that were not produced until mid-August 2021 in connection with the filing of a motion for summary judgment. That's when the images were finally produced, and based upon Appellant's diligent and zealous review of those images, Appellant was able to show additional facts showing all the deficiencies contained in the envelope images. Are you acknowledging that there was a new claim in your proposed amended complaint? No. In fact, it's not a new claim. The facts were clarified. Remember, in the original complaint, the facts were based on what had been presented by the county clerk through the discovery recount process. That's all we had available. But once these images were given and provided through the electronic drive, then we were able to make a one-by-one analysis of each of these envelope images and produced an entire report in connection with our response to the motion for summary judgment that showed all the deficiencies in these images. Regarding the deficiencies, for instance, there were 1,800 claims presented. The facts were being clarified based upon the facts that were finally being revealed by the county clerk. Mr. Michaels? Yes, Mr. Hoffman, Justice Hoffman. So we can get to the issues here, because you haven't got a lot of time left. Right. You made five allegations in your original complaint. Of those five allegations, my reading of the record indicates that the trial court dismissed the first allegation, which was counting of ballots was colored by fraud. You withdrew the third allegation, which was that the clerk counted the ballots in 52 precincts for which there was no corresponding envelope. And pardon me, that was the only remaining issue. The court ruled against you on the other issues. Now you file an amended complaint. And in the amended complaint, you raised the question, I believe, that the form residency certificate on the return ballots violated section 19-5 of the election code. Of course, that's not a basis for disallowing a ballot. That was. And second of all, you argued that the ballots which were counted were invalid for several reasons. The ballot return envelopes were missing. 6,350 return ballots contained residency duration certificates that were incomplete. Of course, that's not a basis for disallowing a ballot. And the ballot return envelopes were signed by persons other than the voters or were not signed at all. And they lack verifiable and there were verifiable signature. So that's that's what was left of your proposed amended complaint. Now, the trial court conducts a Loyola analysis and rules against you with the exception, I believe, of the first issue, which suggests that the amendment would cure the defects in the original complaint. And then also found that your amended complaint was barred by latches and unclean hands. So now tell me about this latches and unclean hands. Yes, happy to. The latches argument, notwithstanding what was argued in the response brief, the latches, when you look at the memorandum opinion, only applied to the one factor that you had raised about the certificate residency certification language being different. What the clerk used was different than what the statute required. And the court said that that information would have been available to the appellant prior to the election. And therefore, the appellant could not base any complaints on that, which for our appeal purposes, we would agree with. But the court was clear that latches did not apply to any of the rest of the amended complaint. That was the only part. And that's where we disagree with the respondents in their response brief, where they suggested, at least in the heading, that it's applying to their argument, that it's applying to the entire brief. Regarding the Rule 4.4b Professional Ethics, the unclean hands doctrine, the trial court, without any analysis, adopted an argument initially presented by Respondent's Counsel, suggesting that somehow, by moving the cursor over the redacted signatures on these images, we were able to see whether there was a signature or none, or if the signature matched the name of the voter or didn't, or if it was many times just a straight line across the page rather than a signature. I take it your argument was that the information that you discovered, the signatures or lack thereof, was neither privileged nor confidential. And therefore, the professional responsibility section that was cited was totally inept. Absolutely. Absolutely. And the respondents made two attempts throughout the rest of the proceeding to try and show they were confidential, and neither one supported any finding of confidentiality. One was a reference to FOIA, which was a generic reference to FOIA confidentiality provisions, which had no applicability here. In fact, we showed a U.S. Supreme Court decision that signatures on an envelope in the mail are public information. But additionally, they tried to argue under some, I don't remember the specific site, but under a regulation on voter list that had nothing to do with voting by mail envelopes, the voting list information being maintained on computers and the confidentiality of that list on the computers. The court never found confidentiality based on any arguments, nor did the court present its own arguments for confidentiality. So 4.4 was entirely inapplicable. We also showed that under APA formal opinion in 2006, that our review of these images was entirely proper. We're allowed to do it. This was an attempt to block out what was later characterized as public records, and it was metadata. I want to back up for one minute. It's my understanding that the original motion for summary judgment was denied as to the single ground that remained in the complaint, because the clerk failed to properly certify or otherwise provide supporting testimony, supporting the admission of the scanned ballot return envelope. Then the court came back with an amended motion to reconsider, which the trial court characterizes an amended motion for summary judgment with a certification attached by James Nally, the clerk's attorney. Now, my question for you is, did you ever object to that certification on Rule 191 grounds? And if you did, where will I find that in the record? My recollection is that we did object to that the certification was not proper in responding to the second motion for summary judgment on that on 191 grounds. I don't have an immediate sight to it. I looked for it and couldn't find any such objection. I would be happy to file. I'll look again. You don't have to file anything. I thought it was in the response to the second motion that we objected to the 191. We certainly were objecting to the fact that these did not meet the test of public records. You never moved to strike them. Is that correct? And you use them yourself. This was the only information ever provided. This is all we had to work with. So we did analysis. We, in a sense, did our own recount going one by one through the envelopes to see where this was heading. Because this information had not been provided in discovery as it should have been. If this is what the respondents were going to rely on for summary judgment, it certainly was within the scope of the discovery request. And it should have been provided in discovery. Instead, it was produced in the end only for their own purposes. And yes, we did rely on it because it was the only thing produced. We would have nothing else to respond to. So. I know we're kind of at your time. I think we are. That's why I'm not sure. But for these reasons. Let me ask if Justice Martin or Justice Hoffman have any more questions. I'm going to wait. I'll wait. So if you want to quickly summarize. For these reasons, we ask this court to reverse the entry of summary judgment below and to remand the case for and allow the filing of the amended complaint. And for so we can proceed with a recount. Thank you, Your Honors. Thank you. And then, Mr. Kasper, I believe you are going to begin. You're muted. Yes, correct, Your Honor. And five minutes, you said? Yes. Yes, Your Honor. Okay, you may begin. Thank you. Good morning, Justice Rossford, Justices, Michael Kasper on behalf of the county clerk. I'd like to take some of my quick time to begin by commenting on one of the things that Mr. Michaels opened with, where he said that in this case, the plaintiff did everything he was supposed to do. And what's interesting to me, and this is a very, very curious case from my perspective, because here we are three years almost after the election. And the one thing that the plaintiff never did in this case, never, is ask the circuit court to order a recount. There are four citations in the record where the plaintiff refuses to ask the judge to order a recount or the court comments on the failure of the plaintiff to seek a recount. The first one appears on June 15, 2021. That's in page 997 of the record. The transcript, June 17, the plaintiff specifically says, quote, we do not know if we are going to request a recount, close quote. In October of 2021, this is in the record of proceedings, October 13, page 98, Judge Stanton says, quote, we are not doing a recount yet. You haven't asked me for one. If you ask me for one, I'll give it to you, close quote. And then finally, all the way in January of 2022, January 5th, the record of proceedings, page 155, Judge Stanton says, you guys can have a recount and no one asked me for it, close quote. The reason why this case is unusual is normally a case that has a recount, the clerk is ready to go to trial on that recount within three or four months after the election so that they then have time to prepare for the next election. And here we are, since this election, the clerk has administered three additional elections and is now getting ready for the fourth. And so for that reason, given the delays and the delays, it's almost as if the plaintiff was attempting to not lose the case rather than do anything to try to win the case. The clerk decided to produce, through this motion for summary judgment, the envelopes. As we know, you have to file electronically now. Supreme Court Rule 18-368 requires that. There were too many documents for the file electronically, so we filed them with the hyperlinks and through a flash drive to all the parties. Everyone agreed to that. There was no objection to that. I agree with you, Justice Hoffman. There's no record of an objection to the filing of the documents the way they were. Regarding the signatures and the redactions and the expectation of privacy, as Mr. Michael said, they cite some case about expectation of privacy outside of mail envelopes. But what they fail to take into account is the Illinois Election Code, which specifically says, this is in section, this is in 10 ILCS 5-5-43C2. Section 5-5-43C2 says that the clerk or any election authority cannot make images of signatures available for inspection outside of their offices. That's why if you challenge your opponent's petition signatures, you have to go to the office to look at the signature. So the clerk's position is that it's prohibited by law from allowing the signatures to be produced outside its offices. Once we did that, we expected the plaintiffs to say we'd like to come in and look at the signatures, but they never did. And so the clerk produced these envelopes to both sides to allow them to sort that through. And Justice Hoffman, I believe your analysis is correct regarding the other allegations in the complaint, particularly the fraud claim. They claimed that the clerk involved in election fraud never presented any evidence, never pursued that. That claim was dismissed. All the other claims were either dismissed or withdrawn. Regarding the envelopes, Judge Stanton admitted them under Rule 901, 901-7. But he also stated that they could have been admitted under Rule 804, the hearsay exception. It's an interesting question because normally the envelope is asserted. The truth of the matter is what the voter puts. How long have you lived in this precinct? This is my signature telling you I'm eligible to vote. But here the claim was not that the voter gave false information or it wasn't a signature. The claim here was that the envelope didn't simply exist. So maybe the envelope was going to the truth of the matter that it did exist. But in any case, the judge admitted them saying, and this appears on pages 2893 to 94 of the record, that the envelopes are admitted under Rule 901, but they could also be admitted under Rule 804. I agree with you, Judge. There was no objection to the method, Justice Hoffman, to the method. I didn't ask the question as to the method in which they were attended. I asked the question as to whether there was an objection to Nally's certification based on Supreme Court Rule 191A. Because it requires that you have to have on the face of whatever document, the affidavit or the certification, some type of acknowledgment as to how he knew that personally. And there is none. And so my question was, did they ever object? Because the first time, the summary judgment was denied because there was improper certification. There was nothing supporting it. Second time, they came back on the motion to reconsider with this Nally certification. And my question was, was there ever an objection to that certification? I agree. I do not see one in the record. And I think the next element about this that's important is that regarding the envelopes and the certification, the plaintiff has abandoned that claim also in the circuit court. Judge Stanton found that they abandoned the claim about the envelopes. This appears on page 2118 of the record. Because their amended complaint completely drops the claim that there are missing envelopes. And instead is entirely dependent on what they claim are defects in the envelopes. So I think that the circuit court was correct in applying the level of factors and latches in reaching the conclusion that waiting this long to move those claims along. How long did they really take to file their motion for an amended complaint? Between the time that you produced this drive with the ballots on them, and the time they moved to file an amended complaint. My view of the record is that was three and a half months. That's correct. But the dispositive fact is not that we produced the envelopes through our motion for summary judgment nine months after the complaint was filed. But those envelopes were available for inspection at the discovery recount that they did in December of 2020. My question is, the envelopes may have been available at the discovery recount, but were the signature cards for the voters available? How can they claim there's an invalid signature if they don't have the voter cards? The signature clips are available in the county clerk's offices as well, sure. But were they available at the time of the discovery recount? They're always available. So their poll watchers didn't get to see them during the discovery recount, did they? The poll watchers can certainly ask to see the database. I know they can ask to see it, but my question was, were they there? The signature clips are in the computer system. As far as I know, they were not printed out. Okay, all right, go ahead. And so I think that I've come up upon my time. If there's no other questions, I'll defer to Mr. Leticinski for the day. I have no other questions. No, neither do I. Okay, thank you, Mr. Kasper and Mr. Leticinski. Good morning. I would like to start off and state that this election contest case is no different than any of the other election contest cases that have been filed related to the November 4th, 2020 election throughout the United States. This case started out with allegations of fraud lodged against the clerk. It also alleged that 18,423 people were allowed to vote in this subcircuit and basically ballot stuffed this case. The plaintiff, when presented with facts, decided to withdraw the fiction. They kept withdrawing allegations of plaintiff in this case and never ever decided to do a recount, as Mr. Kasper pointed out. Like all the other November 4th, 2020 election contest, this matter is not just being fought in this court, but also the United States District Court. And there's a reference to it in the federal claims reservation that is in the record at 375 to 416. Can I ask a question? In the original complaint, am I wrong that the prayer in the original complaint sought a complete recount and an order declaring DeFranco the winner of the election? Yes. Okay, so they requested a recount. They did request a recount in their petition. And when Judge Stanton repeatedly asked them, do you want me to order the recount? They said no repeatedly during the entire proceedings. One aspect of this case is unusual for most election contest or any election case. These cases move at light speed. The party, the litigant proceeding to contest the election must move not with ordinary diligence, but extreme diligence. And the record is devoid anywhere where DeFranco filed any motion for expedited proceeding, any motion for expedited briefing of this appeal. He decided to take a walk through the park at the expense of Judge Fallon. The best way to describe this is Judge Fallon is essentially on a tilt-a-whirl at the controls of Mr. DeFranco. We're going to spend time, money, and resources and go challenge these allegations that ultimately I'm going to withdraw because I have no facts supporting them. This was a verified petition for election recount. And when Mr. Michael states that the respondents failed to answer discovery, Judge Fallon answered discovery. Judge Fallon promptly answered discovery. Judge Fallon actually issued discovery. Judge Fallon issued requests to admit where Mr. DeFranco admitted that they never objected to anything related to the discovery recount. And that is in the record. Judge Fallon also pursued this case to move it to a conclusion because her rights and the rights of the voters of the 12th Judicial Sub-Circuit are being denied. The 12th Judicial Sub-Circuit, as we sit here today, no longer exists in its boundaries that existed on November 4, 2020. Judge Stanton did not abuse his discretion in granting the motion for summary judgment. The motion for summary judgment had one issue remaining. And it started out with Mr. DeFranco alleging that... Counsel, I don't think the granting of motion for summary judgment is a matter of discretion of the trial court. You have to be entitled to judgment as a matter of law. That is correct. It's not a discretionary issue. Okay. Judge Stanton, as a matter of law, took the evidence that was admitted and that evidence was never objected to. And the cites provided by the appellant, Mr. DeFranco in this case, does not support his position that he made an objection to the hyperlinks. In fact, at the record 289, which is a hearing on the motion for summary judgment of May 22, 2022, Mr. DeFranco's counsel acknowledged that the vote-by-mail envelopes as redacted were in the record. And so there was no issue before the court. The court then, in the light most favorable to Mr. DeFranco, took his calculation. Can we get the horse before the cart? Prior to the granting of the summary judgment, there was a motion to file an amended complaint. Now the question becomes, did the court then abuse its discretion by failing to allow the filing of the amended complaint? Because if the amended complaint could have been filed, then the summary judgment never should have been granted. So why was it not an abuse of discretion on the part of the trial court to deny the motion for leave to amend? I do not believe that the court abused its discretion to grant leave to file the amended petition for the following reason. All the allegations that Mr. DeFranco was making in this amended petition were available to him in the discovery recount. And with regard to the objections that they're raising as to the discovery recount, Judge Fallon's request to admit facts, which Mr. DeFranco admitted that they never filed any objection, never sought clarification of the rules, never once went into court to challenge the process or complain about anything, establishes that he waived his rights to object to the discovery recount. And additionally, they had the ability to file a petition for this election contest. That information was readily available. The signatures were available for them to see. There's nothing in the record or even the affidavit of the peer legal that removed the redaction stating that I compared these signatures to the signature clips at the clerk's office. So I believe the court properly determined that filing the amended complaint, the four factors under the Loyal Academy case were not met. The prejudice here, and we could talk about all four factors, the prejudice here to Judge Fallon and the voters of the 12th Judicial Subcircuit, Mr. Casper has it right. We are now three years past the election, and there's been nothing to move this case, what I would call to a prompt of resolution. Many of the things raised in that amended complaint, as you noted Justice Hoffman, would not cure or get around the election code, including certification. With regard to the signatures that they want to raise, I would point to the record at C-2122, and this is Judge Stanton's ruling on the denial of the motion to file the amended complaint. And he states, as to the remainder of the claims relating whether voters properly completed the certification and how they signed their certifications, DeFranco should have been aware of these alleged defects since the discovery recount. So it was not just limited to the certifications, but also the signatures. So I take it that goes to the timeliness issue under the Loyola analysis? Yes, correct, John. Okay. Election matters are handled, and in the election contest statute, this case takes precedence over all other cases. From the time of the filing of this case in December of 2020 until the court's ruling on the motion for summary judgment, the parties were before Judge Stanton more than 13 times. There are 13 transcripts in the record indicating the dates, and there were additional appearances. The parties were there on a regular basis to move this case along. But these quotes that are so damaging to Mr. DeFranco is, I don't want to recount. The court was ready to order a recount, but Mr. DeFranco consistently said no. In addition, there were prior instances where Mr. DeFranco's counsel... Well, wasn't he indicating that he wanted to see if the issues would be narrowed, and there was some discussion going on about a security bond at the same time? Yes, a party under the election contest statute is now required to post security in a bond. There was a petition filed by the clerk of the court indicating we need to have security set, and Mr. DeFranco's counsel responded that it's premature because I have not yet decided if I want to recount. And so the court reserved ruling on that, and the court continually asked Mr. DeFranco's counsel if you want to recount. And Mr. DeFranco's counsel repeatedly said no. Well, the amended petition included that they wanted a recount, didn't it? It did ask for that, but it was asking it under new claims and theories that Mr. DeFranco should have been aware of. Back in December, actually December of 2020, when the discovery recount was conducted and completed. And those allegations were not lodged at all, and that information was available. Additionally, just like the discovery contest allegations in this election contest, Mr. DeFranco says, no, I'm not seeking an election recount based on deficiencies in the discovery recount. I'm just giving context. But when faced with the fact that he admitted he never challenged anything or complained about the discovery recount, you can't have that as a basis. Just likewise, alleging that the certification now was improper when he should have done that before the election, and I would cite the Trump versus Biden case. You just can't sit back and wait to see what happens to disenfranchise tens of thousands. And in this case, he would be seeking to disenfranchise over 160,000 voters of the 12th Judicial Subcircuit. Okay. Are there any questions? No. Okay. If you just want to summarize, counsel, then we'll go back to the upper line. Judge Stanton correctly granted summary judgment based on the evidence that was properly before him and no counter evidence was offered by Mr. DeFranco. Likewise, Judge Stanton correctly denied the request for leave to file the amended petition for election contest that was filed literally almost a year after the election took place and more than 11 months after the filing of the original contest when all that information in that amended contest was available to Mr. DeFranco. For these reasons, Judge Fallon requests that this panel affirm the decision of the trial court. Thank you, counsel. Mr. Michaels? You're on mute, Mr. Michaels. Mr. Michaels, before you begin, I want to ask you just a quick question. So Fallon was installed in office on Pearl Harbor Day 2020. Is that correct? I really don't know, Your Honor. But the election was in 2020, and so she would have been installed in December of that year. Right. At that time, did you request that the court enjoin that installation? No, there was no request at that time. The case wasn't even filed, I believe, at that point. I see. All right. Very good. Thank you. Regarding the focus in the respondent's argument is that there was never a request for recount. That is absolutely wrong. It was in the original complaint. It was in the amended complaint. What happened was that the clerk's office came back with a budget of several hundred thousand dollars and divided it up. Well, do you want to just recount a vote by mail envelopes and ballots, or do you want to vote all the election ballots? And there was discussions, and it was by the prior counsel for Mr. DeFranco on this. And there were discussions about proceeding with that. And Judge Stanton cut it off and said, I'm not ordering a recount at this time. Proceed with discovery. The parties proceeded with discovery. The clerk's office did not produce anything except a public record that had already been available. I believe, in recollection, it was the election canvas from the Illinois State Board of Elections that they produced. These envelope images were all available, obviously, but they weren't produced until August 19th and 20th of 2021. That's eight months later. We keep hearing about expedited. We hear about time. We hear about asking. The evidence that they're relying on, supposedly, wasn't produced until mid-August. Mr. DeFranco's attorneys acted diligently and within three and a half months came up with their own entire analysis of over 22,000 images plus conducted a 206A1 examination of Mr. Michalowski, which we had to get a court order to obtain. And once we brought him in, he knew virtually nothing about any of the certified questions that he was produced as an expert to respond to. We also responded- Counsel, I have a question for you. Yes. On the question of the timeliness of the proposed amendment, the circuit court found that it was untimely based on the discovery recount because everything that you set forth that was left in your proposed amended complaint was known or should have been known to DeFranco at the time of the discovery recount. Why is that wrong? Because it requires Mr. DeFranco, at that time, immediately after losing the election, to be prescient to everything that's in the clerk's records. There is no way that Mr. DeFranco, even bringing in volunteer poll watchers to stand in front of a clerk's employees flipping through pages quickly, and there's affidavits on file in this case from our poll watchers that saw this. This is what was done. There was no time or manner in which anyone would have been prescient enough to know what to look for. It was only on producing the envelope images that we could actually sit down, examine them, and know what to look for. Well, weren't the envelopes available at the time of the discovery recount? My recollection from the record is that they were not available. Some were available, but they were still searching. That's why the initial complaint showed that there weren't enough envelopes to meet the number of ballots that were supposedly. There were missing envelopes. The clerk's office did not know itself whether all the envelopes were there, and they kept representing that we'll find the rest. Even during the motion for summary judgment, they came back and followed, oh, we found a couple hundred more overseas or a hundred and some odd more overseas envelopes and produced them. Can I just ask for a clarification there? Are you saying that none of the envelopes were available or not? No, not at all. I was not a poll watcher, but based on the record, reading the record, there were some envelopes available, but the question was whether the envelopes could even be matched to the ballots or were they just taking envelopes from any election and putting them on a table and putting a stack of ballots on and trying to match them. At that point, the focus was during the discovery recount, which by the way, I believe the court opinions show the discovery recount does not determine the rest of the process, but the discovery recount is just essentially a process by which we can start looking at what were the issues, if any. And Mr. DeFranco used the information made available to him. Were there envelopes available? My understanding is yes. Were the poll watchers individually reviewing them? No, they were on the clerk's tables and the clerks were showing the envelopes were there in stacks. Well, of the three issues that had any merit in your proposed amended complaint, one of them was that ballot return envelopes were missing. You knew that at the discovery recount. There's no question about that. You knew it. Yes. The second issue that seemed to survive was that the return envelopes were signed by persons other than the voter or were not signed at all. So now, wouldn't you have been able to tell that there were envelopes that weren't signed by a voter? I'm not sure to what extent. You're talking about at the discovery recount stage? I'm not sure at discovery recount if the envelopes were even reviewed. The affidavit showed that they were present. Well, and lastly, the ballot return envelopes lacked verifiable signatures. So if the ballot envelopes were there at the discovery recount, couldn't you see whether they had verifiable signatures? My understanding is that the records were not present at those discovery recounts. The voter registration cards, section 19-8G requires a verification of signatures against either the application for a vote-by-mail ballot, which nowadays we don't have that because now you can register to get it perpetually, but a verification against that application or a verification against a voter registration card. My understanding based on reviewing the record is that neither of those were present at the voter recount. Okay. I think I've definitely gone over my two minutes and I'm really thankful. Let me ask you this question. So assuming for the sake of our discussion that you're allowed to file your amended complaint, explain to us if you would, how do you anticipate this recount happening? What specifically would be recounted? Go ahead. I believe the recount should focus just on the vote-by-mail envelopes and an examination of whether those envelopes meet the criteria to be acceptable based upon what we now know. I see. One question that's underlying all this, we don't know, only the clerk knows, do they have ballots associated to those envelopes? Because if they don't, that becomes a different issue. Although the Supreme Court... You muted yourself. Sorry. The Supreme Court in 1983, in a situation where there was some question whether the ballots were identifiable, and I'm just going to put this out there. It was not an issue that's been raised, but under 93 Illinois 2nd 463 1983 in rate contest of offices of governor and lieutenant governor, Supreme Court applied a proportionality approach on determining. That's how I would, at that point, argue going forward. Focus the recount on the vote-by-mail envelopes, and if they cannot identify the ballots, then we're going to have to work with proportionality based on that. I see. If you were to get such a judgment logistically, how would that work? Would Judge Fallon be removed from office? Who would do that? How would that work? Well, what the case law says is that the election is then... Yes, she's not a judge because the election was overturned. All right. And you think that... At this point, I think she's running in a different district next time she runs, presuming she does run because, as already noted... You're of the opinion, then, that the circuit court then would have the authority to remove a sitting judge from office? I don't think she would be a veiled judge, yes. That's correct. What would the remedy be? DeFranco would be declared to have been the winner? Yes. And he's a judge? The alternative is, the alternative remedy would be that the entire sub-circuit election was void. I mean, there is case law for that, too. In which case, neither of them would be judges. Right. Any other questions for Mr. Michaels? I think so. For these reasons, we ask that the court reverse the trial court's entry of summary judgment and allow us to file an amended complaint and proceed with a recount. Thank you, Your Honors, for your time. Thank you all, and we are now taking the case under advisement.